1  Paul H. Duvall (CA State Bar # 73699)
2  pduvall@kingballow.com
   KING & BALLOW
3  9404 Genesee Avenue; Suite 340          E-filing          ORIGINAL
   La Jolla, CA 92037-1355                                    FILED
4  858/597-6000 Facsimile: 858/597-6008                      MAY 3 0 2008

5                                                             RICHARD W. WIEKING
6  Attorney for Defendant Integra Software Systems, LLC   CLERK, U.S. DISTRICT COURT
                                                           NORTHERN DISTRICT OF CALIFORNIA
7                                                                    OAKLAND

8                      UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11

12

13  WHOLESALE AMERICA MORTGAGE,      )   Case No. C08-02720 MMC
    INC. dba California Financial Group,  )
14                                    )
                                      )                           ADR
15                        Plaintiff,  )
                                      )   DEFENDANT'S NOTICE
16                                    )   OF REMOVAL
    v.                                )
17                                    )
                                      )
18                                    )
    INTEGRA SOFTWARE SYSTEMS, LLC,    )
19  and DOES 1-50, inclusive,         )
                                      )
20                                    )
                          Defendant   )
21                                    )
                                      )
22                                    )

23

24  TO THE CLERK OF THE COURT AND TO ALL PARTIES AND THEIR

25  ATTORNEYS OF RECORD:

26
        Please take notice that, pursuant to **28 U.S.C. §§ 1446, 1332(a)** and **1441**,
27
28  Defendant Integra Software Systems, LLC (hereinafter "INTEGRA"), by and through

COPY

1    its undersigned counsel, reserving all defenses and objections, respectfully removes an

2    action commenced in the Superior Court of the State of California for the County of

3

4    Alameda, in which all jurisdictional requirements imposed by **28 U.S.C. § 1441** have

5    been met.  In support of this Notice of Removal, INTEGRA states:

6          1.     On or about May 1, 2008, Plaintiff Wholesale America Mortgage, Inc.

7

8    dba California Financial Group, a California corporation, filed a lawsuit in the

9    Superior Court of the State of California for the County of Alameda styled *Wholesale*

10    *America Mortgage, Inc. dba California Financial Group, a California corporation v.*

11

12    *Integra Software Systems, LLC, a Tennessee corporation, and Does 1-50*, Case No.

13    RG 08385260. A copy of the Complaint is attached as **Exhibit A**. The Complaint

14    alleges breach of written contract, rescission, intentional misrepresentation, and

15

16    negligent misrepresentation. The Complaint claims the Plaintiff "is entitled to the

17    return of its consideration and other payments - $140,500 – plus interest, and other

18    damages according to proof." (Ex. A, Compl., ¶ 36.)

19

20          2.     On May 5, 2008, INTEGRA's counsel received by first class mail a copy

21    of the Summons and the Complaint for this case. This notice of removal, therefore, is

22

23    being filed within thirty (30) days after the first receipt by Defendant, through service

24    or otherwise, of a copy of the initial pleading in the state court action setting forth the

25    claim for relief upon which Plaintiff's action is based, as required by **28 U.S.C. §**

26

27    **1446(b)** and the cases interpreting it.  A copy of the Summons is attached as **Exhibit**

28    **B**.

DEFENDANT'S NOTICE OF REMOVAL

1     3.     Pursuant to 28 U.S.C. §1332(a)(1), the United States District Courts have original jurisdiction of all civil actions where the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and cost, and is between citizens of different States. In this case, each defendant named in this action is a citizen of a different state and the amount in controversy exceeds $75,000.00, exclusive of interests and cost.

4.     Thus, this Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because Plaintiff is a corporation organized under the laws of the State of California with its principal place of business in the State of California, while Defendant INTEGRA is a corporation organized under the laws of the State of Tennessee with its principal place of business in the State of Tennessee. The amount in controversy exceeds $75,000.00, exclusive of interest and costs because Plaintiff claims damages of "$140,500 – plus interest, and other damages according to proof." (*Compl,* ¶ 36.)

5.     At the time that the complaint was filed in state court and at the time of filing this notice, plaintiff as a corporation was a citizen of California.

6.     At the time that the complaint was filed in state court and at the time of filing this notice, defendant as a corporation was a citizen of Tennessee.

7.     Removal to this district and division is proper pursuant to 28 U.S.C. § 1441(a).

DEFENDANT'S NOTICE OF REMOVAL

8.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders filed in this case and received by Defendant while it was pending in the state court are attached hereto.

9.     In accordance with 28 U.S.C. § 1446(d), written notice of removal will be served promptly on all adverse parties and will be filed with the Superior Court of the State of California for the County of Alameda. A copy of the Notice to Adverse Party for the Removal will be filed with the Superior Court of the State of California for the County of Alameda and also served on Plaintiff. A copy of Defendant's Notice of Filing Removal and Notice to Adverse Party are attached hereto as **Exhibit C and Exhibit D** respectively.[1]

**WHEREFORE**, having met all of the requirements for removal under 28 U.S.C. § 1441 and all jurisdictional requirements established by 28 U.S.C. § 1332, Defendant gives notice that it removes this action from the Superior Court of the State of California for the County of Alameda to this Court.

DATED:     May 29, 2008          KING & BALLOW

Paul H. Duvall (CA State Bar # 73699)
9404 Genesee Avenue; Suite 340
La Jolla, CA 92037-1355
Telephone: 858/597-6000
Facsimile: 858/597-6008
pduvall@kingballow.com
Attorney for Defendant

---

[1] The exhibits to Defendant's Notice of Removal and the exhibits to the Notice to Adverse Party are not attached herein because this document is the exhibit and attaching it would be circular and duplicative.

- 4 -

DEFENDANT'S NOTICE OF REMOVAL

# Exhibit A

1  RICHARD T. BOWLES (# 46234)
   VERONICA O. BENIGNO (# 238053)
2  BOWLES & VERNA LLP
   2121 N. California Boulevard, Suite 875
3  Walnut Creek, California 94596
   Telephone: (925) 935-3300
4  Facsimile: (925) 935-0371
   Email: rbowles@bowlesverna.com
5
   Attorneys for Plaintiff
6  Wholesale America Mortgage dba California Financial Group

7

8                      IN THE SUPERIOR COURT OF CALIFORNIA

9                      IN AND FOR THE COUNTY OF ALAMEDA

10
   WHOLESALE AMERICA MORTGAGE, INC.         CASE NO.: RG08395963
11 dba CALIFORNIA FINANCIAL GROUP,
                                            **COMPLAINT FOR BREACH OF**
12            Plaintiff,                    **WRITTEN CONTRACT, RESCISSION,**
                                            **INTENTIONAL MISREPRESENTATION,**
13       vs.                                **AND NEGLIGENT**
                                            **MISREPRESENTATION**
14 INTEGRA SOFTWARE SYSTEMS, LLC, and
   Does 1-50, inclusive,
15                                          **DEMAND FOR JURY TRIAL**
              Defendants.
16

17        Plaintiff WHOLESALE AMERICA MORTGAGE, INC. dba CALIFORNIA FINANCIAL

18 GROUP complains against Defendants, and each of them, as follows:

19                            GENERAL ALLEGATIONS

20        1.    Plaintiff WHOLESALE AMERICA MORTGAGE, INC. dba CALIFORNIA

21 FINANCIAL GROUP (hereinafter "CFG" or "Plaintiff") is, and at all times relevant hereto was, a

22 corporation duly organized and existing under the laws of the State of California with its principal place

23 of business in Pleasanton, Alameda County, California.

24        2.    Plaintiff is informed and believes and on that basis alleges that Defendant INTEGRA

25 SOFTWARE SYSTEMS, LLC (hereinafter "Integra" or "Defendant"), is a limited liability company

26 duly organized and existing under the laws of Tennessee that provides loan origination software to its

27 mortgage lending clients.

28

ENDORSED
FILED
ALAMEDA COUNTY

MAY 01 2008

CLERK OF THE SUPERIOR COURT
By Esther Coleman, Deputy

3.     The true names and capacities of Defendants sued herein as DOES 1 through 50, inclusive, are presently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.  Plaintiff is informed and believes, and on that basis alleges, that DOES 1 through 50 were in some manner responsible for the damages alleged herein, and Plaintiff will seek leave of this Court to insert the true and correct names of any such DOE Defendant once their identities are ascertained.

4.     Plaintiff is informed and believes, and on that basis alleges, that Defendants, including those designated as DOES 1 through 50, inclusive, were and are the agents, employees, co-venturers, partners, or in some manner agents or principals, or both, for each other, and in doing the acts alleged herein were at all times acting within the course and scope of their agency, employment, venture or partnership.

5.     On or about May 17, 2007, CFG's President, Ronald D. Perkins, signed a Software Licensing Agreement (hereinafter "Agreement") with Defendant Integra.  In the Agreement, Integra agreed to create and install a custom-tailored Loan Origination System ("LOS") to meet CFG's business needs.  Integra represented that the LOS would include a pricing engine with live products, pricing and guidelines, integration with CFG's Amcat Dialer, broker and consumer portals, banking management and reporting, and accounting and payroll capabilities as well as reporting.

6.     Aside from paying for Integra's custom build, CFG was also purchasing from Integra a license to access and use the LOS.  A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

7.     Upon execution of the Agreement, and as required by its terms, CFG paid $85,500 to Integra.

8.     Even before CFG executed the Agreement, beginning in approximately March 2007 to June 2007, CFG was providing Integra and its Project Manager, Rob Sandoz, with requested information, including CFG's current banking and accounting reports, in order to assist Integra with the software build.  Thus, at all times relevant herein, Integra was aware of CFG's business needs.

9.     During this time period, CFG was under the expectation that "training" of CFG employees on the LOS would be completed by the end of July 2007.

Bowles & Verna LLP
2121 N. California Blvd
Suite 875

2
COMPLAINT

10.    Sometime on or about June 14, 2007, CFG realized that "training and implementation" was, in reality, the technical build of the LOS software and that, contrary to Integra's representations, no training was included in the contract.

11.    During the week of June 25, 2007, another Integra employee, Nancy Shurson, came on-site to assist with the "implementation training." Up until this point, CFG was informed and believed that it had provided Integra with all the information necessary to start and complete the software build. However, Ms. Shurson seemed to be repeating the information gathering phase of the process already done by Mr. Sandoz. CFG later learned that Ms. Shurson's role was to perform the actual technical administrative build of the software.

12.    At all relevant times, CFG was informed and believed and on that basis alleges that the time and services provided by Mr. Sandoz and Ms. Shurson were not going to exceed the project budget, nor were they going to be excessive or out-of-the-norm charges.

13.    Beginning in June 25, 2007, Ms. Shurson began performing various "projects" she claimed were part of the build of the software without first consulting with anyone at CFG. Ms. Shurson was constantly reassuring CFG that the software build was "on or ahead of schedule." At no time did anyone from Integra, or Ms. Shurson, inform CFG that it was going over-budget with this project.

14.    Sometime between July 25, 2007 and August 8, 2007, CFG learned that it had exceeded the budget on the installation and implementation of Integra's system. Integra advised CFG that the next step of the build was to conduct an "Early User Acceptance Training" to provide feedback to Integra's programmer. However, because CFG had incurred unexpected costs, it did not hire Integra to conduct the training nor could it pay for the creation of such training materials. As a result, no operable system was ever installed.

15.    By the end of August 2007, CFG was forced to reassess the Integra project based on Integra's failure to deliver usable software within a reasonable budget and time frame.

///

///

///

Bowles & Verna LLP
2121 N. California Blvd
Suite 875

3
COMPLAINT

### FIRST CAUSE OF ACTION
#### (Breach of Written Contract Against All Defendants)

16. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 15, as though set forth in full herein.

17. On or about May 17, 2007, CFG entered into a written Agreement with Integra for a custom-built LOS, a true and correct copy of which is attached hereto as **Exhibit 1**. The LOS was supposed to include a pricing engine with live products, pricing and guidelines, integration with CFG's Amcat Dialer, broker and consumer portals, banking management and reporting, and accounting and payroll capabilities as well as reporting.

18. CFG has performed all conditions, covenants, terms, and obligations Integra required to be performed on CFG's part under the Agreement, including purchasing hardware from a third-party that was compatible with the software system Integra was going to install; providing Integra with access to its computer hardware and system software; and utilizing Integra's Project Management, Training, and Implementation services to assist with the build and implementation of the LOS. Any performance which CFG has not rendered has been excused, waived, is not yet due or is unenforceable as a matter of law.

19. To date, CFG has paid Integra $140,500 pursuant to the Agreement. CFG has also incurred additional expenses because Integra required CFG to purchase third-party hardware that was compatible with Integra's software.

20. CFG adhered to all instructions and specifications for installation provided by Integra and its personnel.

21. Integra has breached the Agreement by, among other things, failing to complete the software build within the project timeline and in accord with its reassurances that the software build was "on or ahead of schedule." Integra also breached the Agreement by failing to deliver and install, at any time, an operable, usable LOS which was to include a pricing engine with live products, pricing and guidelines, integration with CFG's Amcat Dialer, broker and consumer portals, banking management and reporting, and accounting and payroll capabilities as well as reporting.

22.    Integra also failed to inform CFG that certain services, especially the "projects" performed by Ms. Shurson without CFG's consent, would be and actually was putting CFG over budget on this project and therefore resulted in the accruement of additional expenses that were not disclosed.

23.    As a direct and proximate result of Integra's breaches of the Agreement, CFG has been damaged in an amount according to proof at trial, but in no event less than the jurisdictional minimum of this Court.

WHEREFORE, Plaintiff prays for judgment as more fully set forth below.

**SECOND CAUSE OF ACTION**
**(Rescission of Contract Against All Defendants)**

24.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 23, as though set forth in full herein.

25.    On or about May 17, 2007, CFG entered into a written Agreement with Integra for a custom-built Loan Origination System ("LOS") which was to include a pricing engine with live products, pricing and guidelines, integration with CFG's Amcat Dialer, broker and consumer portals, banking management and reporting, and accounting and payroll capabilities as well as reporting. A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

26.    CFG has performed all conditions, covenants, terms, and obligations required to be performed under the Agreement, including paying $85,500 as consideration for Integra's services; purchasing hardware from a third-party that was compatible with the software system Integra was going to install; providing Integra with access to its computer hardware and system software; and utilizing Integra's Project Management, Training, and Implementation services to assist with the build and implementation of the LOS. Any performance which CFG has not rendered has been excused, waived, is not yet due or is unenforceable as a matter of law.

27.    To date, CFG has paid Integra $140,500 pursuant to the Agreement. CFG has also incurred additional expenses because Integra required CFG to purchase third-party hardware that was compatible with Integra's software.

28.    CFG's consent was obtained through fraudulent and/or negligent misrepresentations of material fact. Through Integra's representations, CFG was informed and believed that installation and

Bowles & Verna LLP
2121 N. California Blvd
Suite 875

1   implementation of the software was "on or ahead of schedule," and that the actual "training" of CFG's

2   end users would be completed by the end of July 2007.

3      29.     Also, at all relevant times, CFG was informed and believed and on that basis alleges that

4   the time and services provided by Mr. Sandoz and Ms. Shurson were not going to exceed the project

5   budget, nor were they going to be excessive or out-of-the-norm charges. At no time did Integra,

6   including Ms. Shurson, inform CFG that it was going over-budget with this project.

7      30.     Integra failed to fulfill its representations and provide CFG with an operable software

8   system within the project timeline and budget.

9      31.     By August 2007, no usable software had been built and/or implemented onto CFG's

10   computer system. CFG was advised by Integra that the next step of the build was to conduct an "Early

11   User Acceptance Training" (UAT) to provide feedback to Integra's programmer. Based on the

12   excessive budget, CFG agreed to attempt to conduct the "UAT" without Integra in order to keep costs

13   down. With no budget, no training and no useable software, CFG was rendered helpless. As a result,

14   no operable system was ever installed.

15      32.     By the end of August 2007, CFG ceased using Integra's services.

16      33.     Between November 2007 to December 2007, Integra and CFG entered discussions to

17   renegotiate the balance due to Integra and the deliverables due to CFG. CFG considered paying

18   additional money to Integra, however, after reviewing the package, the final product would still lack

19   banking management and reporting and accounting and payroll management and reporting. As a result,

20   CFG decided to not move forward.

21      34.     On or around April 14, 2008, CFG offered to return any of Integra's software and/or

22   hardware installed in exchange for all of CFG's payments made pursuant to the Agreement.

23      35.     Had Integra informed CFG of the true facts, including the actual amount of time it would

24   take to build the software and that the software build would be from scratch, CFG would not have agreed

25   to purchase Integra software system and/or use its services.

26      36.     CFG is therefore entitled to rescind the Agreement due to Integra's intentional and/or

27   negligent misrepresentations, and as such is entitled to the return of its consideration and other

28   payments – $140,500 – plus interest, and other damages according to proof.

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

6
COMPLAINT

1    WHEREFORE, Plaintiff prays for judgment as more fully set forth below.

2

**THIRD CAUSE OF ACTION**
3    **(Intentional Misrepresentation Against All Defendants)**

4        37.    Plaintiff hereby incorporates by reference each and every allegation contained in

5    paragraphs 1 through 36, as though set forth in full herein.

6        38.    May 17, 2007, CFG entered into a written contract with Integra for a custom-build LOS

7    that would a pricing engine with live products, pricing and guidelines, integration with CFG's Amca

8    Dialer, broker and consumer portals, banking management and reporting, and accounting and payroll

9    capabilities as well as reporting.

10        39.    Throughout their business dealings, Integra made representations to CFG that were false,

11    including that the software build, installation, and implementation would work for CFG and fit CFG's

12    business needs; that the software installation and implementation was "on or ahead of schedule"; that

13    Integra would assist with end user training which would be completed by July 2007; that Integra would

14    install and implement an operable software system in a timely manner and within the agreed upon

15    budget.

16        40.    Integra knew these representations were false when made or made such representations

17    recklessly without regard for their truth. Integra further made these representations with the intent to

18    induce CFG to take the actions herein alleged.

19        41.    CFG has performed all conditions, covenants, terms, and obligations required to be

20    performed on its part under the Agreement in reasonable reliance on Integra's representations. CFG

21    purchased hardware from a third-party that was compatible with Integra's software system; it provided

22    Integra with access to its computer hardware and system software; and utilized Integra's Project

23    Management, Training, and Implementation services to assist with the build and implementation of the

24    LOS.

25        42.    As a direct and proximate result of Integra's representations, CFG has been harmed and

26    damaged. CFG's reliance on Integra's representations was a substantial factor in causing CFG's harm.

27        43.    CFG has been damaged in an amount according to proof at trial, but in no event less than

28    the jurisdictional minimum of this Court.

44.    Integra has acted with oppression, fraud, and malice within the meaning of Civil Code Section 3294 by intentionally misrepresenting material facts as alleged herein. CFG is entitled to recover from Defendants, and each of them, punitive damages in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment as more fully set forth below.

## FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation Against All Defendants)

45.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 44, as though set forth in full herein.

46.    CFG entered into a written contract with Integra for a custom-build LOS that would include a pricing engine with live products, pricing and guidelines, integration with CFG's Amcat Dialer, broker and consumer portals, banking management and reporting, and accounting and payroll capabilities as well as reporting.

47.    Integra made representations to CFG that were not true, including that the software build, installation, and implementation was "on or ahead of schedule"; that Integra would assist with end user training that would be completed by July 2007; and that Integra would install and implement an operable software system in a timely manner and within the agreed upon budget.

48.    Integra had no reasonable grounds for believing these representations were true when made, and made these representations with the intent to induce CFG to take the actions herein alleged.

49.    CFG has performed all conditions, covenants, terms, and obligations required to be performed on its part under the Agreement in reasonable reliance on Integra's representations.

50.    As a direct and proximate result of Integra's representations, CFG has been harmed and damaged, and CFG's reliance on Integra's representations was a substantial factor in causing such harm.

51.    CFG has been damaged in an amount according to proof at trial, but in no event less than the jurisdictional minimum of this Court.

///

///

///

Bowles & Verna LLP
2121 N. California Blvd
Suite 875

8

**PRAYER**

WHEREFORE Plaintiff California Financial Group prays for judgment against Defendants Integra Software Systems, LLC and Does 1 through 50, and each of them, as follows:

    1.    For rescission of the Software Licensing Agreement and restitution of the contract price;

    2.    For compensatory damages in an amount to be proven at trial and in no event less than the jurisdictional minimum of this Court;

    3.    For punitive damages under Civil Code Section 3294 as determined by the jury;

    4.    For reasonable attorneys' fees as allowed by law;

    5.    For all interest allowed by law;

    6.    For CFG's costs of suit herein; and

    7.    For such other and further relief as the Court may deem proper.

Dated:  May 1, 2008

                        BOWLES & VERNA LLP

                        By:                        
                                Richard T. Bowles
                                Veronica Ann O. Benigno
                                Attorneys for Plaintiff
                                Wholesale America Mortgage dba
                                California Financial Group

# Software Licensing Agreement

1.  **INTRODUCTION**

This is an Agreement between <u>Integra Software Systems, LLC of 117 Seaboard Lane, Suite F-290, Franklin, TN 37067</u> ("Licensor") and <u>California Financial Group of 2600 Stoneridge Mall Road, Suite 200, Pleasanton, CA 94588</u> ("Licensee") under which Licensor is licensing software on a non-exclusive basis for the Licensee's own use under the terms and conditions stated below.

2.  **DEFINITIONS.**

As used in this Agreement, the following definitions shall apply:

2.1.    "Agreement" shall mean this Agreement between Licensor and Licensee.

2.2.    "Authorized User" shall mean any officer, employee, or other party as designated by Licensor to act as an Individual LOS User, Concurrent LOS User, Non-Production User or System Manager of the Program.

2.3.    "Confidential Information" shall include all information relating to Licensor's and Licensee's businesses, products and services, including but not limited to data, trade secrets, discoveries, ideas, concepts, know-how, techniques, software (including the Program), business activities and operations, reports, studies and other technical and business information of Licensor and Licensee, and any other information clearly designated in writing as confidential by either party. Without limitation of the foregoing, the parties agree that Confidential Information of Licensee includes, but is not limited to, all data and information regarding the customers and potential customers of Licensee, the identity of Licensee's customers and potential customers and all "nonpublic personal information" pertaining to Licensee's "customers" and "consumers" as such quoted or similar terms are defined in the Privacy Laws, (together, "Customer Data").

Confidential Information shall not include information that is: (i) at the time of disclosure to the receiving party hereunder, in the public domain; (ii) after disclosure to the receiving party hereunder, published or otherwise becomes part of the public domain through no fault of the receiving party; (iii) without a breach of duty owed to the disclosing party hereunder, is in the possession of the receiving party hereunder at the time of disclosure to the receiving party; (iv) received after disclosure to the receiving party hereunder from a third party who had a lawful right to and, without a breach of duty owed to the disclosing party, did disclose such information to the receiving party; or (v) independently developed by the receiving party hereunder without reference to or use of information which would otherwise constitute Confidential Information of the disclosing party hereunder.

2.4.    "Concurrent User" shall mean a user who is granted access to the Program, or any other application as defined in Section 9.2 of this Agreement, provided that the total number of simultaneous accesses granted under this Agreement has not been exceeded.

2.5.    "Effective Date" shall mean the date upon which both Licensee and a duly authorized officer of Licensor has approved and signed the Agreement.

EXHIBIT "1"

2.6.     "Individual User" shall mean a user who is granted access to the Program, or any other application as defined by Section 9.2 of this Agreement, provided that the total number of accesses granted by individual authorizations on specified computers have not been exceeded.

2.7.     "Installation Date" shall mean the first day of initial installation and configuration of the software on Licensee's computer hardware.

2.8.     "License Fee" shall mean the fee for licensing the Program or Programs as specified in the attached Schedule B to the Agreement.

2.9.     "Non-Production User" shall mean a user who is granted access to the Loan Origination System (LOS) functionality for the express purpose of testing or evaluating new releases or custom programming changes.

2.10.     "Privacy Laws" means the federal law commonly referred to as the Gramm-Leach-Bliley Act (15 U.S.C. 601 et seq.), the implementing regulations issued in connection therewith, (12 CFR Part 40), as both are in effect from time to time, and all other federal and state laws and regulations pertaining to the confidentiality, use and/or disclosure of information by financial institutions, and all court, agency and administrative decisions, policies and proceedings related thereto, as may from time to time be in effect.

2.11.     "Program" shall mean all computer software, machine executable code, Scheme, Java or other language source code, configuration files, and associated documentation which is created by or supplied, either directly or indirectly, by Licensor including all Releases which are provided from time to time.

2.12.     The term "Release" shall mean a subset of a Version of the Program or any materials which are supplied by Licensor at or after the delivery of the Program, including any software provided for the purpose of improving the functions or performance of the Program, changing the intellectual property contained in the Program, expanding the capability or ease of operation of the Program, or for the purpose of fixing errors in program logic, or meeting regulatory requirements.

2.13.     The term "Software Support" shall mean support and maintenance services provided by Licensor as defined in Schedule A for Programs provided for in this Agreement.

2.14.     The term "Software Support Fee" shall mean that applicable Quarterly fee due for Software Support in accordance with Licensor's Software Support Schedule.

2.15.     The term "Version" shall mean a major application change to the Program which significantly alters the database structure, design or look and feel of the Program.

## 3.     GRANT OF LICENSE

3.1.     Licensor hereby grants to Licensee, and Licensee hereby accepts, a perpetual non-exclusive license to use the Program subject to the terms and provisions of this Agreement.

3.2.     The license granted by this Agreement authorizes use of the Program as specified in Schedule B.

3.3.     Licensee recognizes that Licensor will control the licenses granted by incorporating either software, hardware or a combination of both to work in conjunction with the Program to assist in the Licensor's protection against unauthorized use.

3.4.    The license granted by this Agreement authorizes use of the Program only on the computer hardware or similar hardware to that listed in the attached Schedule C to the Agreement ("Authorized Hardware").

3.5.    For Individual LOS User licenses only, one copy of the Program must be licensed for each computer or workstation on which the Program is installed.

3.6.    The Program may be installed on more than a single network and access may be permitted providing the Licensee complies with the terms stated in Schedule B.

## 4.    SCOPE OF THE AGREEMENT

This Agreement shall apply to each Program or Release of each Program that Licensee is currently licensing from Licensor or shall license in the future.

## 5.    COPIES OF THE PROGRAM

5.1.    Licensor shall furnish to Licensee one copy of the Program.

5.2.    Licensee shall be entitled to make additional copies of the Program to the extent necessary for use of the Program by authorized users on the Licensee's computer hardware. Licensee shall reproduce and include copyright or trade secret notices on any copies in the same text as stated in the copies provided to Licensee.

5.3.    Licensee is authorized to make additional copies of the Program to run on separate development and test environments for non-production use, as well as for disaster recovery

## 6.    INSTALLATION

6.1.    Initial installation of the Program on a computer shall be Licensor's responsibility. Subsequent installations of the software shall be Licensee's responsibility. Licensee shall follow the installation procedures as prescribed by Licensor.

6.2.    At such time that Licensor performs the initial installation of the Program, the following provisions shall apply: Licensor shall load the Program on Licensee's computer hardware and conduct Licensor's standard test procedures on the installed Program. Licensor shall be relieved of its obligation to perform the installation, until Licensee's computer hardware and operating system software are in good operating condition. Licensee shall provide Licensor with access to the computer hardware and electrical power, workspace and such other items as may be required to complete the installation.

## 7.    PAYMENT OF PROGRAM LICENSE FEE

In consideration of the license granted under this Agreement, Licensee shall pay to Licensor the License Fee as defined in Schedule B.

8.    **ACKNOWLEDGMENT OF LICENSOR'S OWNERSHIP RIGHTS**

All rights in the Program including but not limited to Confidential Information, trade secrets, trademarks, service marks, patents, and copyrights are, shall be and will remain the property of Licensor or any third party from whom Licensor has licensed software or technology. All copies of the Program delivered to Licensee or made by Licensee remain the property of Licensor.

9.    **RESTRICTIONS**

9.1.    Each party shall keep in confidence all Confidential Information of the other party and will not directly or indirectly disclose to any third party or use for its own benefit, or use for any purpose other than the performance of its obligations or exercise of its rights under this Agreement, any Confidential Information it receives from the other party. Each party shall use the same degree of care to protect the other party's Confidential Information as it would employ with respect to its own information of like importance which it does not desire to have published or disseminated, and in no event less than a reasonable degree of care. Licensee agrees to keep the Program in confidence and to take all reasonable precautions to ensure that no unauthorized persons, including but not limited to competitors of Licensor or other software development companies have access to the Program and that no unauthorized copies are made. Each party may make Confidential Information of the other party available to those of its employees, agents, contractors or service providers who have a need to know such information and who are subject to binding use and disclosure restrictions at least as protective as those set forth herein. Licensor shall provide the appropriate training to its employees and to its subcontractors, if any, to ensure compliance with this Agreement in all respects by Licensor, its employees, and its subcontractors, if any. Notwithstanding the foregoing, either party may make disclosures as lawfully required or requested by a court of law, or any governmental entity or agency in connection with seeking any governmental or regulatory approval or in connection with a judicial proceeding, provided that the party source of the Confidential Information is given prior notice sufficiently in advance of such disclosure to contest the disclosure, reasonable measures are taken to limit such disclosure and to obtain confidential treatment or a protective order and the party source of the Confidential Information is allowed to participate in such efforts. Either party may seek injunctive relief to enforce its rights under this Subsection.

9.2.    Licensee agrees that the database layout ("Schema") supplied with, and an integral part of, the Program is copyrighted by Licensor and specifically requires a license for each use, whether that use is by the Program, or any other application written or owned by Licensee or any other third party, which is intended for the specific purpose to add, change or delete data represented by the aforementioned Schema, whether in whole or any part thereof.

9.3.    Licensee may not alter any proprietary markings on the Program, including copyright, trademark, trade secret, and patent legends.

9.4.    Licensee may not de-compile, disassemble, or reverse engineer the Program.

9.5.     Licensee agrees to obtain prior written approval, which approval will not be unreasonably withheld, from Licensor before utilizing the services of any consultant or contractor to perform customizations or alterations to the program. Any customizations or alterations performed by anyone other than Licensor may invalidate any Warranty provided by Licensor and may also adversely affect the ongoing compliance and usability of the Program. Any modifications required by Licensor to correct any errors caused by the above customizations or alterations will result in charges based upon Licensor's then current rate for custom programming.

## 10. LICENSEE'S OBLIGATION FOR DATA PROTECTION

10.1.    Licensee is required to perform daily backups of the data on the computer system used by the Program so that the likelihood of data loss is minimized. Licensee shall be solely responsible for backup software and hardware. Licensee shall provide the safe storage of all backup tapes and/or disks.

10.2.    Licensee shall be responsible for keeping its computer system free of computer viruses or any other hardware failures. Any loss of data resulting from computer viruses or any other hardware failures are the sole responsibility of the Licensee and are not covered under the Software Support agreement.

## 11. WARRANTY

11.1.    Licensor owns all rights in and to the Program and Deliverables or has sufficient rights to grant the rights and licenses granted hereunder and has the full right, power and authority to grant such rights and licenses without the consent of any third party.

11.2.    Licensor warrants that the Program will perform materially in conformance with the user documentation supplied as part of the Program for any period in which Software Support is paid for and in effect under the terms of this Agreement ("Warranty Period").

11.3.    Neither the Program nor any Deliverable shall infringe any copyright, patent or trademark, misappropriate any trade secret, or otherwise infringe any intellectual property right of any third party. If all or any portion of the Program or any Deliverable becomes (or in the opinion of Licensee or Licensor may become) the subject of any claim or suit for infringement or violation (and in the event of any adjudication that the Program, Deliverable, or any portion thereof does infringe or if the use of the Program, Deliverable, or any portion thereof is enjoined), Licensor, at Licensor's sole expense and in addition to all other remedies available at law or under this Agreement, shall either: (a) procure for Licensee the right to use the Program, Deliverable, or the affected portion thereof; (b) replace the Program, Deliverable, or affected portion with other suitable software which is substantially similar to the Program, Deliverable, or affected portion in functionality and performance; or (c) modify the Program, Deliverable, or affected portion to make it non-infringing provided that the modified Program, Deliverable, or affected portion provides substantially the same functionality and performance as it did before such modification

11.4.    LICENSOR AND ANY THIRD PARTY FROM WHOM LICENSOR HAS LICENSED SOFTWARE OR TECHNOLOGY DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT, WITH RESPECT TO THE PROGRAM AND THE ACCOMPANYING WRITTEN MATERIALS.

11.5.    LICENSOR AND ANY THIRD PARTY FROM WHOM LICENSOR HAS LICENSED SOFTWARE OR TECHNOLOGY WILL NOT .BE LIABLE FOR LOST PROFITS, LOST OPPORTUNITIES, OR INCIDENTAL OR CONSEQUENTIAL DAMAGES UNDER ANY CIRCUMSTANCES.

11.6.    EXCLUSIVE REMEDY: LICENSEE'S EXCLUSIVE REMEDY AGAINST LICENSOR FOR ANY BREACH OF THIS AGREEMENT SHALL BE CORRECTION OF ANY ERROR OR DEFECT IN THE PROGRAM AS TO WHICH LICENSEE HAS GIVEN NOTICE.

11.7.    If any problem, operational failure or error of the Program has resulted from any alteration of the Program, accident, abuse, or misapplication, then this warranty shall be null and void, at Licensor's option.

## 12.    TRAINING

Upon delivery and installation, Licensor will provide Licensee with Training Services as specified on Schedule B upon the payment terms stated therein. Thereafter training services will be provided on the terms and at prices stated in Licensor's then current schedule of fees for training services.

## 13.    SOFTWARE SUPPORT

13.1.    Software Support for the Program shall consist of the services set forth on Schedule A hereto. Software Support shall be provided to mutually agreed upon "Authorized Users" of the Program.

13.2.    During the Warranty Period specified above, Licensee shall be entitled to software support. "Expiration Date" shall mean the date of the expiration of the Warranty Period and each subsequent anniversary of such date. Before each Expiration Date, Licensee shall be billed for the then applicable Quarterly Software Support Fee. If Licensee has paid the applicable Software Support Fee on or before the Expiration Date, Licensee shall be entitled to receive an additional three months of Software Support. Licensor shall have no obligation to provide Software Support 30 days after the Expiration Date if the applicable Quarterly Software Support Fee is unpaid.

13.3.    The Software Support Fee shall be sent to Licensor at the address set forth above, or such other address as Licensor may designate. Information as to the amount of the currently applicable Software Support Fee for the Program is available from the Licensor on request.

13.4.    Licensor's current policy is to support the most current Release of the software and the next prior Release; provided however that Software Support shall be provided on each Release for a minimum period of six (6) months.

13.5.    Licensee acknowledges and agrees that it may be necessary to update its computer hardware and/or operating system to achieve compatibility with the currently supported version. Licensee acknowledges and agrees that if it has allowed its subscription to Software Support to lapse, and if its version of the Program is not currently supported, it may have to obtain a current version to obtain Software Support, as is discussed below.

13.6.    If Licensee is not using a currently supported version of the Program, Licensor may suspend provision of Software Support for the Program until Licensee cures this condition without refunding the Software Support Fee.

13.7.   Licensee may terminate Software Support by written notice to Licensor prior to any Software Support Fee anniversary as defined in Schedule B, 2b. However, Licensor shall not be required to refund any Software Support Fee.

13.8.   If Software Support has been terminated or has lapsed, Licensee may reinstate its subscription to Software Support upon payment of the annual Software Support Fee in effect at the time, plus a reinstatement fee equal to 50% of the annual Software Support Fee in effect at the time. Upon reinstatement of Software Support, Licensee will be upgraded to the current version of the Program.

13.9.   Any installation required for an upgrade to a currently supported version of a Program under any paragraph of this Agreement, when performed by Licensor, will be charged to Licensee at Licensor's then current hourly rates plus reimbursement for any out-of-pocket costs or expenses incurred by Licensor. Such installation charges shall be in addition to other fees or charges that may be due.

## 14.   TERM AND TERMINATION

14.1.   The term of this Agreement shall commence upon the Effective Date and shall continue in effect until terminated as provided for herein. This document shall not become effective unless a duly authorized officer of Licensor has approved and signed the Agreement.

14.2.   It is agreed that either party may terminate this Agreement immediately upon written notice to the other party in the event that such other party (a) becomes insolvent or makes an assignment for the benefit of creditors; (b) files or has filed against it any petition under any Title of the United States Code or under any applicable bankruptcy, insolvency, reorganization or similar debtor relief law which is not discharged within thirty (30) days of said filing, or (c) requests or suffers the appointment of a trustee or receiver, or the entry of an attachment or execution as to a substantial part of its business or assets.

14.3.   Licensor may terminate this Agreement in the event Licensee (a) fails to make, when due, any License Fee payment or other payments required under this Agreement; (b) commits a material breach of any of its obligations concerning scope of use or the protection of the Program, intellectual property of Licensor, and Confidential Information; or (c) materially breaches any of its other obligations under any provision of this Agreement, which breach is not remedied within thirty (30) days after notice thereof by Licensor to Licensee.

## 15.   RIGHTS UPON TERMINATION

15.1.   Upon termination of this Agreement, Licensee's license to use the Program shall terminate, and Licensee shall immediately turn over to Licensor all copies of the Program, and any other Confidential Information relating to the Program and shall remove and erase completely any copies of the Program installed or recorded on any hard disk or other storage medium. Licensee shall promptly certify to Licensor in writing that it has complied with this requirement.

15.2.   Upon termination of this Agreement, Licensee shall pay to Licensor all fees due through the effective date of such termination. Unless otherwise specified herein or otherwise agreed in writing, all fees collected or accrued prior to the date of termination shall be retained by Licensor without any pro rata refund to Licensee.

15.3.   The termination of this Agreement shall not extinguish any rights or obligations of the parties relating to protection of Confidential Information.

16. **AUDIT**

During the term of this Agreement and for a term of one year after termination, upon reasonable notice, Licensor may enter the premises of Licensee and perform reasonable audit and inspection procedures to confirm that Licensee is in compliance with the terms and conditions of the Agreement, including, but not limited to, provisions relating to scope of use of the Program, protection of Confidential Information, and termination. Licensee shall cooperate in any such inquiry.

17. **ESCROW AGREEMENT**

Upon execution of this agreement, Licensor will enroll Licensee as a beneficiary under the technology escrow account established between Licensor and Iron Mountain Intellectual Property Management, Inc.. Licensee agrees to pay any enrollment charges and annual maintenance fees as required for all beneficiaries. Current annual maintenance fees are $500 per beneficiary, but are subject to change.

18. **ASSIGNMENT**

18.1. Licensee may not assign, in whole or in part, its rights granted in the Agreement without the express prior written consent of the Licensor, whereby that consent may be granted or withheld at the Licensor's sole discretion. Any purported assignment, except as provided for in this paragraph, shall be null and void and a material breach of this Agreement.

18.2. The Licensee's assignment of this Agreement shall not discharge Licensee from its obligations, but shall make Licensee's assignee an additional obligor under this Agreement. Any assignment by Licensee will be invalid unless the assignee agrees in writing delivered to Licensor to be bound by and perform all obligations and terms of this Agreement.

19. **GENERAL PROVISIONS**

19.1. **Applicable Law.** This Agreement shall be construed pursuant to substantive law of the State of Tennessee.

19.2. **Risk of Loss.** Upon delivery and installation of the Program, Licensee shall assume all risk of loss and damage to the Program, and shall at its sole cost and expense replace any lost or damaged portion thereof.

19.3. **Taxes.** Licensee shall pay, in addition to the other amounts payable under this Agreement, all local, state and federal excise, sales, use, personal property, gross receipts and similar taxes (excluding taxes imposed on or measured by Licensor's net income) levied or imposed by reason of the transactions under this Agreement. Licensee shall, upon demand, pay to Licensor an amount equal to any such tax(es) actually paid or required to be collected or paid by Licensor.

19.4. **Required Consents.** Licensee warrants that it has obtained lawful permission to use all hardware and software required in order for the Program to be used on Licensee's computer system.

19.5. **Hardware and Third Party Software.** It is agreed that Licensee bears sole responsibility with respect to the adequacy, purchase, installation, configuration, performance, and maintenance associated with all hardware, operating systems, databases, and other third party software used in conjunction with the Program. Hardware or software recommendations made by Licensor are based on Licensor's experience, but due to variations in configuration and usage, Licensor cannot guarantee specific performances. Licensor is not responsible for installing, maintaining, or debugging third party hardware or software such as operating systems, servers, databases, or networks. Any request for assistance will be billable as custom work at Licensor's then current rate for custom programming. Any such work performed by Licensor is provided on a best efforts basis without warranty.

19.6. **Public Reference.** Licensee consents to the public use of its name as a Licensee of Licensor as part of or pertaining to a customer list. Any use of Licensee name for advertising in any medium is restricted without prior Licensee approval.

19.7. **Software Lock.** Licensee consents to acts by Licensor to disable the Program (including the triggering of software features that prevent operation of the Program) in the event that Licensee fails to pay the License Fee for the Program or uses or transfers the Program in breach of this Agreement. No such acts to disable the Program will be performed without written notice to Licensee from the Licensor.

19.8. **Employee Solicitation.** Both parties mutually agree that during the term of this Agreement, for whatever reason, neither party will, directly or indirectly, solicit, seek or procure the services, whether as an employee or otherwise, of any employee or contracted individual of the other party who is or was employed by or contracted with the other party without the prior written consent of the other party, which may be withheld in the other party's sole discretion and upon such terms specified and agreed to in writing by the other party.

19.9. **Required Acceptance by Officer of Licensor.** This Agreement is not binding upon Licensor until executed by an authorized representative of Licensor.

19.10. **Modification.** This Agreement may not be modified or amended except in writing, which is signed by authorized representatives of each of the parties. No purported modification or amendment shall be binding until approved in writing and signed by an authorized representative of Licensor. This Agreement cannot be modified by e-mail correspondence.

19.11. **No Waiver.** The failure of either party to exercise any right or the waiver by either party of any breach, shall not prevent a subsequent exercise of such right or be deemed a waiver of any subsequent breach of the same of any other term of the Agreement.

19.12. **Notice.** Any notice required or permitted to be sent hereunder shall be in writing and shall be sent in a manner requiring a signed receipt, such as Federal Express, courier delivery, or if mailed, registered or certified mail, return receipt requested. Notice is effective upon receipt.

19.13.    **Force Majeure.**  Neither party shall be deemed in default of this Agreement to the extent that performance of their obligations or attempts to cure any breach are delayed or prevented by reason of any act of God, fire, natural disaster, accident, act of government, shortages of materials or supplies or any other cause beyond the control of such party ("Force Majeure") provided that such party gives the other party written notice thereof promptly and, in any event, within fifteen (15) days of discovery thereof and uses its best efforts to cure the delay. In the event of such Force Majeure, the time for performance or cure shall be extended for a period equal to the duration of the Force Majeure but not in excess of three (3) months.

19.14.    **Entire Agreement.** This Agreement constitutes the sole and entire agreement of the parties with respect to the subject matter hereof and supersedes any prior oral or written promises or agreements. There are no promises, covenants or undertakings other than those expressly set forth in this Agreement.

19.15.    **Adequate Evaluation.**  Licensee hereby acknowledges that it has been given ample opportunity, time, material, and access to the Program and Licensor's clients to adequately evaluate the Program.

19.16.    **Equitable Remedies.** The parties recognize that money damages is not an adequate remedy for any breach or threatened breach of any obligation hereunder by Licensee involving intellectual property, Confidential Information or use of the Program beyond the scope of the license granted by this Agreement. The parties therefore agree that in addition to any other remedies available hereunder, by law or otherwise, Licensor and any third party from whom Licensor has licensed software or technology shall be entitled to an injunction against any such continued breach by Licensee of such obligations.

19.17.    **Arbitration.** Any dispute relating to the terms, interpretation or performance of this Agreement (other than claims for preliminary injunctive relief or other pre-judgment remedies) shall be resolved at the request of either party through binding arbitration. Arbitration shall be conducted in Nashville, Tennessee under the rules and procedures of the American Arbitration Association ("AAA"). The parties shall request that the AAA appoint a panel of three arbitrators and, if feasible, include one arbitrator of the three who shall possess knowledge of computer software and its distribution; however the arbitration shall proceed even if such a person is unavailable.

19.18.    **Late Fees, Costs and Attorneys Fees.** A late payment charge of 1.5% per month, compounded monthly, shall apply to any payment due from Licensee that is in arrears for a period exceeding thirty (30) days.  In any legal action or arbitration proceeding brought on any account, each party shall be responsible for their own costs of litigation or arbitration, including attorney's fees.

19.19.    **Exclusive Jurisdiction and Venue.** Any cause or action arising out of or related to this Agreement, including an action to confirm or challenge an arbitration award, may only be brought in the courts of applicable jurisdiction in Davidson County, TN at King & Ballow in Nashville, and the parties hereby submit to the jurisdiction and venue of such courts.

So agreed between the parties signing below.

Licensor: Integra Software Systems, LLC

By: _____

Name: ____GERALD D. PRATT_____

Title: ____PRESIDENT_____

Date: ____5/21/07_____


Licensee: California Financial Group

By: _____

Name: ____Ronald D. Perkins____

Title: ____President_____

Date: ____5/15/07_____

# Schedule A - Software Support

## 1.    SERVICES PROVIDED.

Software Support shall consist of the following services:

a)    Licensor shall assist Licensee in diagnosing errors and malfunctions, which occur when the Program is used by Licensee. Licensor is not responsible for errors or malfunctions caused by any hardware or any third party operating system.

b)    Licensor shall provide support services to Licensee to attempt to correct diagnosed errors and malfunctions. Licensor shall attempt to provide Releases that implement corrections and shall attempt to assist Licensee in using the Program in a way that can avoid diagnosed errors, malfunctions and defects.

c)    Licensor shall provide support services to Licensee to attempt to keep the Program compatible with the then current version of the operating system of the computer hardware.

d)    Licensor may provide Licensee with new Releases for the Program licensed to Licensee. Releases may include new features and functions added to the Program and/or may provide corrections to errors or malfunctions. The timing and content of Releases will be at the sole discretion of Licensor.

e)    Licensor will affect delivery of each Release to Licensee. All deliveries and shipments of Releases will be at Licensor's expense. The Licensee will install each Release at Licensee's expense.

f)    Licensor will perform remote diagnostics when Licensor deems appropriate based on reported errors. Licensor shall use its best efforts to respond to Licensee's notification of material errors on the same day as notification is given to Licensor or on the following day.

g)    All Software Support shall be performed during the Service Hours unless other arrangements are mutually agreed to by the parties in writing. "Service Hours" shall mean the hours of 7:00 AM through 7:00 PM CT. After normal "Service Hours", Licensor will provide support for critical service issues, via pager, cellular phone or other means of communications.

h)    Licensor will provide reasonable technical support by telephone concerning use of the Programs and diagnosis of problems or errors.

i)    Licensor shall provide Licensee with telephone number(s) and/or other contact information in order to allow Licensee to accomplish the required notification and request information.

j)    Software Support does not entitle Licensee to Software Modules available from Licensor which are designed to increase the number of terminals, to add additional applications or to cover business functions that are not included in the Program currently licensed to Licensee. Such Software Modules may be licensed from Licensor. If such additional Software Modules are licensed by Licensee, Releases relating to them will be available as part of Software Support under this Agreement upon current payment of the then current Software Support Fees for such Modules.

k)      Licensor agrees to provide adequate response time to requests for support based upon the standards as identified below in Paragraph 2 – ERROR CORRECTION STANDARDS. If extended research is required, Licensor will notify Licensee and provide estimated time of resolution. Provided Licensee uses the standard procedures for requesting customer support, Licensor will track all software support requests and will provide Licensee with access to the tracking software utilized.

## 2.    ERROR CORRECTION STANDARDS.

Licensor shall provide Licensee error correction services for the Program as set forth below:

a)      A **Level 1 Program Error** shall be deemed to have occurred when there exists an error in the Program that substantially impacts beneficial use of the Program by users for a core business function. Within one (1) business day of Licensor's receipt of notice of a Level 1 Program Error, Licensor shall have responded and assigned personnel with appropriate technical expertise to diligently and continuously work with appropriate personnel of Licensee to correct the error or reach a mutually acceptable workaround.

b)      A **Level 2 Program Error** shall be deemed to have occurred when there exists an error in the Program that intermittently impacts beneficial use of the Program by users, but does not render the Program inoperative. Within two (2) business days of Licensor's receipt of notice of a Level 2 Program Error, Licensor shall have responded and assigned personnel with appropriate technical expertise to diligently and continuously work with appropriate personnel of Licensee to correct the error or reach a mutually acceptable workaround.

c)      A **Level 3 Program Error** shall be deemed to be a minor error in the Program that is not a Level 1 or Level 2 Program Error. Licensor shall respond to notices of Level 3 Program Errors in accordance with the rendering of technical support as set forth above.

## 3.    CONDITIONS OF SOFTWARE SUPPORT.

The following terms and conditions shall apply at all times while Software Support is in effect:

a)      Licensee shall provide Licensor with access at the site to its computer hardware, system software, the Program and Licensee data files with sufficient workspace required to perform the Software Support services. Licensee shall also provide sufficient electrical current, telephone and power outlets for Licensor's use in performing Software Support.

b)      Licensee shall supply Licensor with access to the computer hardware, system software, the Program and Licensee data files through the use of the Internet, telephone line(s) and/or modem(s). Licensee must equip the computer system with hardware and communications software approved by Licensor capable of originating telephone calls to and receiving calls from Licensor. Specification for suitable communications hardware and software are available from Licensor on request.

c)      Licensee shall designate an individual who shall be the System Manager. The System Manager must have a working knowledge of the Program and the system hardware and will be responsible for the computer system backups, user access, and for recording and reporting errors and malfunctions.

# **Schedule B – Pricing**

1. **Number of Licensed Users**

   The initial Software License granted Licensee is determined as follows:
   a)     One-Hundred (100) Concurrent LOS Users
   b)     Two (2) Non-Production Users

2. **Software and Software Support Payment Schedule**

   a)     Licensee shall pay a License Fee of One-Hundred Ninety Thousand Dollars ($171,000) for the initial Software License granted.

   b)     Additionally, Licensee shall pay a Quarterly Software Support Fee of $8,550 for the initial Software License granted.

   > These amounts shall be payable as follows:
   >
   > i.   Initial payment of $85,500 is due upon execution of this agreement.
   > ii.  The balance of $85,500 is due four months from the date on this License Agreement.
   > iii. On the six-month anniversary of this License Agreement, and each quarter thereafter, Quarterly Software Maintenance equal to 5% of the then current License fee of the total accumulated software costs is due.

   c)     If any amounts are not paid within 30 days after the date such amounts are due, Licensee agrees to pay late charges at a rate of eighteen (18%) per annum of the amount unpaid as a late penalty; provided, however, that in no event shall such charges exceed the maximum interest rate allowed by law.

   d)     In the event Licensee shall fail to pay the fees and other charges due to Licensor hereunder when due, Licensor may, at its option, refuse to provide further services to Licensee under this agreement until such time as Licensee shall have paid any past due fees and other charges to Licensor.

3. **Option to Purchase Additional Software**

   a)     Licensee is granted the option to purchase additional Software Licenses at $1,700 per license seat.
   b)     At such time as the number of Software Licenses equals (150), additional Software Licenses may be purchased for $1,500.

4. **Software Support Advance Payments**

   a)     Quarterly charges for Software Support are payable in advance. Software Support is provided free for the initial users during the first six months from the execution date of this agreement. Payment of the above Software Support fees will provide Licensee with Software Support until the Expiration Date, which is a period equal to three (3) months. In the event Licensee shall fail to pay the fees and other charges due to Licensor hereunder when due, Licensor may, at its option, refuse to provide further services to Licensee under this agreement until such time as Licensee shall have paid any past due fees and other charges to Licensor.

   b)     Software Support for additional software purchases will be due and payable in advance and prorated quarterly.

   c)     Software Support will be calculated at Licensor's then current rate. Licensor's current Software

Support fee rate is twenty (20) per cent per annum, which is collected quarterly ; however Licensor reserves the right to change the rate of Software Support with ninety (90) days written notice.

5.    **Web-Enabled Licenses**

a) .    Licensor utilizes a thin client application server to deploy the Program to remote users as well as to local users. The additional cost for this application is $160 per Licensed Concurrent User for the first year and an annual maintenance charge of $20 each year thereafter. Following installation of the software, Licensee will be invoiced $160 for each Licensed User identified in paragraph 1 a) above.

b)    Should Licensee desire fewer web-enabled access licenses for local or remote users, written notification to Licensor must be provided in advance of installation of the software.   In lieu of this application server, Licensee may utilize Citrix or Terminal Services and no additional charges will be incurred.

6.    **Project Management, Training, and Implementation Services**

a)    Licensee acknowledges that a successful implementation of Licensor's Program requires Licensee to make a minimum commitment in the use of Licensor's resources. More specifically, Licensee agrees to utilize Licensor's Project Management, Training, Implementation services which are outlined as follows:

   i)    **Project Management** – Licensee agrees to utilize a designated, qualified resource of Licensor who will act in its capacity as the Project Manager throughout Licensee's implementation. Licensor's designated Project Manager will co-manage the project on a time and materials basis (estimated to be 2-3 hours per week for 12 weeks) in conjunction with a designee of Licensee. Additionally, Licensee further agrees to utilize Licensor's web accessible project management software, Microsoft Project, as the primary tool for the specific purpose of tracking and monitoring all aspects of Licensee's implementation project. The cost for Project Management is billed at the rate specified in Schedule F.

   ii)    **Training** – Licensee agrees to utilize qualified resources of Licensor who collectively will act in its capacity as Trainers throughout Licensee's implementation. Licensors designated Trainers will be utilized for the specific purpose of providing the following trainings:    .

      a)    System Administration Training (SAT) – This required training provides Licensee's implementation team instruction in the definition, configuration, and use of the Program. This classroom style training consists of three (3) sessions ranging from three to five days each, with each one providing for a combination of instruction and "hands on" use. All sessions of SAT are required to be taken by the Licensee's implementation team members whose collective responsibilities are to assist in performing their respective assigned tasks during the implementation. Additionally, certain members of Licensee's implementation team will also be responsible for providing for the ongoing support and maintenance of the Program on Licensee's behalf, which will commence with the actual use of the Program in a production environment, a.k.a. "Go Live". The cost of System Administration Training is billed at the rate specified in Schedule F.

      b)    Custom Development Training (CDT) – This optional, minimum of eight to ten days, training provides Licensee's designated technical team members instruction in the definition, configuration, syntax, and the API for the tools used to customize the Program through the development of documents, formulas, utilities, interfaces, tasks, etc... This classroom style training consists of one session lasting four to five days, which provides for a combination of instruction and "hands on" use. Additionally, a minimum of one session lasting four to five days of real case

application co-development with a developer of Licensor is required within 30 days of CDT. Licensee agrees that its designated personnel participating in CDT must possess general programming skills. This training is conducted on your site and is billed at the rate specified in Schedule F. Additional or supplemental training classes are provided at Licensor's facility each month and are billed at the rate specified in Schedule F for up to two people.

iii)    **Implementation** – Licensee agrees to utilize qualified resources of Licensor for a minimum of 10 business days during implementation. The cost of these services is billed at the rate specified in Schedule F. Licensor's implementation personnel will collectively assist in the ongoing configuration and definition of the Program throughout Licensee's implementation. Licensors designated implementation resources will be utilized for the specific purpose of providing the following:

a)    Specific guidance as to the system's deployment, and how to best utilize/modify existing out-of-box functionality.

b)    Specific guidance and insight as to what other clients of Licensor have done with the Program, both successfully and unsuccessfully.

c)    Assistance in the definition/configuration of investor/product guidelines, workflow, distribution channels, pricing models, fees, security, document assignments, and contact management (i.e., rolodex/managed vendors).

d)    Assistance in understanding the nuances of the credit reporting and AUS mechanisms as implemented by the Program.

e)    Assistance in identifying and escalating issues that have the potential to delay the implementation.

f)    "Hands on" guidance to newly trained administrators and team members.

g)    Assistance in identifying required customizations of or appropriate workarounds for the Program.

h)    Guidance to Licensee's Information Technology specialists as it relates to technology issues.

i)    Assistance in communications between Licensee and Licensor.

b)    Licensee agrees to pay Licensor for all project management, training, implementation expenses on a weekly basis based on the time and materials used as well as reimburse Licensor for the cost for reasonable travel expenses related to airfare, car rental and standard per diem for hotels and meals as provided in IRS Publication 1542 which is also available on the IRS web site at www.policyworks.gov/perdiem.

c)    If requested by Licensee in writing, Licensor will provide additional training and implementation services at the rate specified in Schedule F. Forms and report creation will be billed at the rate specified in Schedule F.

d)    Licensor reserves the right to change the billable rate on any of the services listed in Schedule F with notice.

7.    **Customization**

a)    If requested by Licensee in writing, Licensor will provide additional custom programming, custom document creation, custom interfaces and data mapping services at the billable rate specified in Schedule F.

b)    Licensor will provide all existing interfaces, templates, screens and forms to Licensee, as is, at no additional cost to Licensee. If desired, Licensor will provide additional customization to any of the above based on the appropriate rate specified in Schedule F.

c)    Licensor will furnish any custom programming requested by Licensee on a mutually convenient schedule based upon the availability of Licensor's personnel and current work schedule.

d)     Licensor may renegotiate the billable rates listed in Schedule F based upon the purchase of a block of hours of most of the listed services.

e)     Licensor reserves the right to change the billable rate on any of the services listed in Schedule F with notice.

## 8.    Miscellaneous

a)     Licensor will provide any documents currently in its library at no additional cost to Licensee. These documents consist of most but possibly not all of the standard documents for FNMA, FHLMC, VA and FHA and are kept in compliance by the forms supplier, which is either Wolters Kluwer Financial Services (formerly VMP) or Harland GreatDocs. The licensing and licensing expense of these documents shall be the responsibility of Licensee.

b)     This agreement will expire if not fully executed on or before April 30th 2007.

# Schedule - C

## California Financial Group/ Integra Hardware Configuration

Licensee recognizes that the hardware/software configuration below is considered by Licensor to be acceptable, whether or not recommended by Licensor, for operating the Program(s) provided in the Agreement. Licensor further makes no guarantees or warranties with respect to the configuration listed below. Licensee is solely responsible for the purchase, licensing, installation, configuration of all hardware and third party software.

> Database Server –
>> Single Intel® Xeon™ processor at 3.0GHz/8MB Cache
>> 6GB RAM
>> Spilt Backplane with RAID 1 and RAID 5
>> RAID for 1 OS  RAID 5 for DATA
>> 74 GB + 15,000 RPM / SCSI hot pluggable HD
>> 74 GB + 15,000 RPM / SCSI hot pluggable HD
>> 146 GB +/ 15,000 RPM / SCSI hot pluggable HD
>> 146 GB +/ 15,000 RPM / SCSI hot pluggable HD
>> 146 GB +/ 15,000 RPM / SCSI hot pluggable HD
>>> (Raid 5 or better)
>> Dual Channel Array controller / 256 Cache
>> Redundant power supply
>> 100/1000 Network Adapter
>> Windows 2003 server
>> MS SQL 2005 Standard
>> Veritas Net backup or similar

> Terminal Servers\ Web servers –
>> Single Intel® Xeon™ processor at 3.16GHz/1MB
>> 4 GB RAM
>> 74GB / 15,000 RPM / SCSI hot pluggable HD
>> 74 GB / 15,000 RPM / SCSI hot pluggable HD
>>> Raid 0 / Write Cache
>> Dual Channel Array controller
>> Redundant power supply
>> 100/1000 Network Adapter
>> Windows 2003 Server
>> IIS

> Product Server – (Workstation Class)
>> Pentium IV 2.4 GHz with 512K Cache
>> 2 GB RAM
>> 10 GB / 10,000 RPM
>> Windows 2000

> Communication Servers- (Workstation Class)
>> (DU, LP, Credit)
>> Pentium IV 2.4 GHz with 512K Cache
>> 1 GB RAM

10 GB / 10,000 RPM
Windows 2000

➢ Workstations-
Pentium III 500 MHz and above
512 MB of RAM
Windows 2000, NT, or XP

➢ Network
100/1000 Backbone
100 MB at each workstation

# Schedule –D

# Product Manager Setup & Maintenance

**Product Manager**
As an additional optional service, Licensor will setup and maintain the Destiny Product Manager with program guidelines for FNMA, FHLMC, VA, FHA and any investor, under the following terms:

**Setup** – Licensor will provide FNMA, FHLMC, VA, and FHA guidelines as well as any existing investor program guidelines at no cost. These programs and guideline sets have been previously disclosed in writing to Licensee. In addition, all currently available loan programs guidelines from the following investors will be added at an additional one-time, flat rate cost of $5,000. These investors are: Greenpoint, Impac, InterFirst, Flagstar and IndyMac. Thereafter, Licensor will provide any additional program guidelines to Licensee according the following schedule:

| | |
|---|---|
| Products 1 – 20 | $100 per product |
| Products 21 – 50 | $50 per product |
| Products 51 or more | $25 per product |

**Guideline Maintenance** - Licensee may request Licensor to maintain all investor product guidelines provided by Licensor for Licensee with any additions, deletions or changes to these guidelines on a regular basis. There is a minimum one year commitment for this service, which is billed monthly at the current rate of $1,000 per month plus fees per the following schedule based on number of products:

| | |
|---|---|
| Products 1 – 20 | $50 per product |
| Products 21 or more | $10 per product |

**Pricing Setup and Maintenance** - If desired, Licensor will setup an ongoing feed for Base Pricing Only for a one-time fee of $2,500. This setup assumes an electronic feed of regular base pricing provided in an excel (.csv) or XML mutually agreed upon formatted file. Pricing adjustment guidelines are available at our current rate of $200 per hour. These are provided by Licensee or an authorized third party on a case-by-case negotiated basis.

# <u>Schedule –E</u>

*<This page intentionally left blank>*

# Schedule –F

## Summary of Fees for Services

| One-time charges for implementation services | | Rate |
|---|---|---|
| Project Management | Oversee implementation from contract to go-live date | $175 / hr. |
| System Administrator Training | Three different sessions of 3 – 5 days each, on your site. | $200 / hr. |
| Implementation Services | Minimum 10 days of configuration and definition of the system | $200 / hr. |
| **Optional charges for miscellaneous services** | | **Rate** |
| Business Analyst Consulting | Review current business processes and provide suggestions for improvement | $200 / hr. |
| Train the trainers training | Four days or more (if necessary) of training the administrators of the system on how to train the staffs. | $175 / hr. |
| Customization Training A | Two sessions of 4 – 5 days of hands on instruction on customizing the application, documents and screens at your site. | $200 / hr. |
| Customization Training B | Group training at Integra site (conducted monthly) Limited to 2 people at this price. | $150 / hr. |
| End-User Training | Four days or more (if necessary) of training the users on the system. | $175 / hr. |
| User Acceptance Training | Use and testing of the system based upon your configurations and settings | $175 / hr. |
| Client System Testing | Rigorous analysis of your overall system | $200 / hr. |
| Crystal Report Training | Training in the design of custom Crystal Reports | TBD |
| Custom Screens | We will design custom screens for you per your specifications | $175 - $200 / hr. |
| Custom Forms | We will design custom forms for you per your specifications | $150 / hr. |
| Crystal Reports Development | We will design custom reports for you per your specifications | $150 / hr. |
| Custom Interfaces | We will design custom interfaces for you per your specifications | $175 / hr. |
| Custom Programming | We will develop any custom LOS application or utility for you | $175 - $200 / hr. |
| Custom Web Development | We will design, build or modify your website to meet your needs | $200 / hr. |
| IT Services | We will assist you with your database or hardware configuration needs | $200 / hr. |
| Network and hardware documentation | We will document your system configuration for daily maintenance, logging and disaster recovery purposes | $175 / hr. |

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Richard T. Bowles/Veronica Ann O. Benigno  46234/238053
Bowles & Verna LLP
2121 N. California Blvd., Suite 875
Walnut Creek, CA 94596
TELEPHONE NO.: 925-935-3300    FAX NO.: 925-935-0371
ATTORNEY FOR *(Name)*: Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

CASE NAME: Wholesale America Mortgage v. Integra
Software Systems, LLC

ENDORSED
FILED
ALAMEDA COUNTY

MAY 0 1 2008

CLERK OF THE SUPERIOR COURT
By Esther Coleman, Deputy

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: RG 0 8 3 8 5 2 6 0 |
|---|---|---|
| [X] Unlimited   [ ] Limited (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:  DEPT.: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[X] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify)*: 4
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 1, 2008

Veronica Ann O. Benigno                    ▶  *(signature)*
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | Martin Dean's ESSENTIAL FORMS™ | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |

2654-002

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)-Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice-
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
    *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach-Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case-Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ-Administrative Mandamus
    Writ-Mandamus on Limited Court
      Case Matter
    Writ-Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal-Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400-3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
      Claim
    Other Civil Petition

2654-002

# Exhibit B

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

<table>
<tr>
<td>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO)* :
Integra Software Systems, LLC, and Does 1-50,
inclusive


**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE)* :
Wholesale America Mortgage, Inc. dba
California Financial Group
</td>
<td>

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*
ENDORSED
FILED
ALAMEDA COUNTY

MAY 0 1 2008

CLERK OF THE SUPERIOR COURT
By Esther Coleman, Deputy
</td>
</tr>
</table>

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

<table>
<tr>
<td>

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Alameda Superior Court

1225 Fallon Street          Oakland, CA 94612
</td>
<td>

**CASE NUMBER:**
*(Número del Caso):*
RG 08 383 418
</td>
</tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Richard T. Bowles          Bowles & Verna LLP
2121 N. California Blvd., Suite 875    Walnut Creek, CA 94596
925-935-3300

<table>
<tr>
<td>DATE:<br>*(Fecha)* MAY 0 1 2008</td>
<td>PAT S. SWEETEN</td>
<td>Clerk, by<br>*(Secretario)* Esther Coleman</td>
<td>, Deputy<br>*(Adjunto)*</td>
</tr>
</table>

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

<table>
<tr>
<td>[SEAL]</td>
<td>

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)* :

3. ☐ on behalf of *(specify)* :
   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)* :
4. ☐ by personal delivery on *(date)* :
</td>
</tr>
</table>

Page 1 of 1

<table>
<tr>
<td>Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004]<br>Martin Dean's Essential Forms ™</td>
<td>**SUMMONS**</td>
<td>Code of Civil Procedure §§ 412.20, 465</td>
</tr>
</table>

2654-002

# Exhibit C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Paul H. Duvall (CA State Bar # 73699)
KING & BALLOW
9404 Genesee Avenue; Suite 340
La Jolla, CA  92037-1355
858/597-6000 Facsimile:  858/597-6008
pduvall@kingballow.com

Attorney for Defendant Integra Software Systems, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| WHOLESALE AMERICA MORTGAGE, INC. dba California Financial Group, <br><br> Plaintiff, <br><br> v. <br><br> INTEGRA SOFTWARE SYSTEMS, LLC, and DOES 1-50, inclusive, <br><br> Defendant | Case No. RG 08385260 <br><br> **DEFENDANT'S NOTICE OF FILING REMOVAL** <br><br> Date Action Filed: May 1, 2008 |

TO THE CLERK OF THE COURT AND TO ALL PARTIES AND THEIR

ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to **28 U.S.C. §§ 1332(a) and 1441**,

Defendant Integra Software Systems, LLC, filed Defendant's Notice of Removal, a

true copy of which is attached hereto as **Exhibit 1**, in the United States District Court

DEFENDANT'S NOTICE OF FILING REMOVAL

1  for the Northern District of California, on or about May 30, 2008.  This notice is being

2  served on all parties.

3

4      Pursuant to **28 U.S.C. § 1446(d)**, Defendant hereby requests that this Court

5  "Proceed no further [in this case] unless and until this case is remanded" to this Court.

6

7

8  Dated: May 29, 2008                    KING & BALLOW

9

10

11                                        Paul H. Duvall (CA State Bar # 73699)

12                                        9404 Genesee Avenue; Suite 340
                                          La Jolla, CA  92037-1355

13                                        Telephone:  858/597-6000
                                          Facsimile:  858/597-6008

14                                        pduvall@kingballow.com

15                                        Attorney for Defendant

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF FILING
REMOVAL

## PROOF OF SERVICE BY MAIL

1    I, Sherie Johnson, declare:

2    1. I am over the age of 18 and not a party to the within cause. I am employed

3

4    by King & Ballow in the County of San Diego, State of California. My business

5    address is 9404 Genesee Avenue; Suite 340; La Jolla, California 92037.

6    2. On May 29, 2008, I served a true copy of the attached document entitled

7

8    **DEFENDANT'S NOTICE OF FILING REMOVAL** by placing it in a sealed

9    envelope with postage fully prepaid addressed as below and placed said envelope for

10   collection and mailing on that date following ordinary business practices:

11

12   Richard T. Bowles, Esq.
     Veronica O. Benigno, Esq.

13   BOWLES & VERNA LLP
     2121 N. California Boulevard, Suite 875

14   Walnut Creek, CA 94596

15   Telephone: 925/935-3300; Facsimile: 925/935-0371
     Attorneys for Plaintiff;

16   WHOLESALE AMERICA MORTGAGE dba California Financial Group

17   3.    I am familiar with King & Ballow's practice for collecting and

18
     processing correspondence for mailing. On the same day that correspondence is

19

20   placed for collection and mailing, it is deposited in the ordinary course of business

21   with the U.S. Postal Service in La Jolla, California.

22
     I declare that I am employed in the office of a member of the bar of this court at

23

24   whose direction the service was made and I declare under penalty of perjury that the

25   foregoing is true and correct. Executed on May 29, 2008, at La Jolla, California.

26

27

28   _____
     Sherie Johnson

- 1 -                                          PROOF OF SERVICE

# Exhibit D



1  Paul H. Duvall (CA State Bar # 73699)
2  KING & BALLOW
   9404 Genesee Avenue; Suite 340
3  La Jolla, CA 92037-1355
   858/597-6000 Facsimile: 858/597-6008
4  pduvall@kingballow.com
5
6  Attorney for Defendant Integra Software Systems, LLC
7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                   FOR THE COUNTY OF ALAMEDA
10
11
12  WHOLESALE AMERICA MORTGAGE,        )   Case No. RG 08385260
    INC. dba California Financial Group, )
13                                      )   NOTICE TO ADVERSE
                            Plaintiff,  )   PARTY
14                                      )
    v.                                  )
15                                      )   Date Action Filed:
    INTEGRA SOFTWARE SYSTEMS, LLC,     )   May 1, 2008
16  and DOES 1-50, inclusive,           )
17                                      )
                            Defendant.  )
18                                      )
                                        )
19  ————————————————————————
20
21  TO THE CLERK OF THE COURT AND TO ALL PARTIES AND THEIR
22  ATTORNEYS OF RECORD:
23
24  ///
25  ///
26  ///
27  ///
28

                              - 1 -

1    PLEASE TAKE NOTICE that, pursuant to **28 U.S.C. §§ 1332(a) and 1441**,

2    Defendant Integra Software Systems, LLC, filed **Defendant's Notice of Removal**, a

3

4    true copy of which is attached hereto as **Exhibit 1**, in the United States District Court

5    for the Northern District of California, on or about May 30, 2008.

6

7

8    DATED:    May 29, 2008             KING & BALLOW

9

10

11                                     Paul H. Duvall (CA State Bar # 73699)
12                                     King & Ballow
                                       9404 Genesee Avenue; Suite 340
13                                     La Jolla, CA  92037-1355
14                                     Telephone:  858/597-6000
                                       Facsimile:  858/597-6008
15                                     pduvall@kingballow.com
16                                     Attorney for Defendant

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE TO ADVERSE PARTY

## PROOF OF SERVICE BY MAIL

1    I, Sherie Johnson, declare:

2    1. I am over the age of 18 and not a party to the within cause. I am employed

3

4    by King & Ballow in the County of San Diego, State of California. My business

5    address is 9404 Genesee Avenue; Suite 340; La Jolla, California 92037.

6    2. On May 29, 2008, I served a true copy of the attached document entitled

7

8    **NOTICE TO ADVERSE PARTY** by placing it in a sealed envelope with postage

9    fully prepaid addressed as below and placed said envelope for collection and mailing

10   on that date following ordinary business practices:

11

12                     Richard T. Bowles, Esq.
                       Veronica O. Benigno, Esq.
13                     BOWLES & VERNA LLP
                   2121 N. California Boulevard, Suite 875
14                     Walnut Creek, CA 94596
15           Telephone: 925/935-3300; Facsimile: 925/935-0371
                     Attorneys for Plaintiff;
16      WHOLESALE AMERICA MORTGAGE dba California Financial Group

17   3.    I am familiar with King & Ballow's practice for collecting and

18

19   processing correspondence for mailing. On the same day that correspondence is

20   placed for collection and mailing, it is deposited in the ordinary course of business

21

22   with the U.S. Postal Service in La Jolla, California.

23   I declare that I am employed in the office of a member of the bar of this court at

24   whose direction the service was made and I declare under penalty of perjury that the

25   foregoing is true and correct. Executed on May 29, 2008, at La Jolla, California.

26

27

28                                         Sherie Johnson

- 1 -                                    PROOF OF SERVICE

## PROOF OF SERVICE BY MAIL

1    I, Sherie Johnson, declare:

2    1. I am over the age of 18 and not a party to the within cause. I am employed

3

4    by King & Ballow in the County of San Diego, State of California. My business

5    address is 9404 Genesee Avenue; Suite 340; La Jolla, California 92037.

6    2. On May 29, 2008, I served a true copy of the attached document entitled

7

8    **DEFENDANT'S NOTICE OF REMOVAL** by placing it in a sealed envelope with

9    postage fully prepaid addressed as below and placed said envelope for collection and

10   mailing on that date following ordinary business practices:

11

12                          Richard T. Bowles, Esq.
                            Veronica O. Benigno, Esq.
13                          BOWLES & VERNA LLP
                       2121 N. California Boulevard, Suite 875
14                          Walnut Creek, CA  94596
15          Telephone:  925/935-3300; Facsimile:  925/935-0371
                          Attorneys for Plaintiff;
16    WHOLESALE AMERICA MORTGAGE dba California Financial Group

17   3.    I am familiar with King & Ballow's practice for collecting and

18

19   processing correspondence for mailing. On the same day that correspondence is

20   placed for collection and mailing, it is deposited in the ordinary course of business

21   with the U.S. Postal Service in La Jolla, California.

22

23   I declare that I am employed in the office of a member of the bar of this court at

24   whose direction the service was made and I declare under penalty of perjury that the

25   foregoing is true and correct. Executed on May 29, 2008, at La Jolla, California.

26

27

28
                                    Sherie Johnson

# CIVIL COVER SHEET

JS 44 (Rev. 12/07) (cand rev 1-16-08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
Wholesale America Mortgage, Inc.
dba California Financial Group

**DEFENDANTS**
Integra Software Systems, LLC and does 1-50 inclusive

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

Alameda County

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Richard T. Bowles
Veronica O. Benigno
Bowles & Verna, LLP
2121 N. California Blvd, Suite 875
Walnut Creek, CA 94596
925-935-3300

Attorneys (If Known)
Paul Duvall
King & Ballow
La Jolla Eastgate
9404 Genessee Ave, Suite 340
La Jolla, CA 92037
858-597-6000

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities— Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities— Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus— Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation |
| ☐ 7 Appeal to District Judge from Magistrate Judgment | |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC § 1332

Brief description of cause:
Plaintiff Claims Defendant failed to provide agreed upon custom software

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 140,500

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)   ☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE 5/29/08

SIGNATURE OF ATTORNEY OF RECORD

PROOF OF SERVICE BY MAIL

1    I, Sherie Johnson, declare:

2    1.  I am over the age of 18 and not a party to the within cause.  I am employed

3

4    by King & Ballow in the County of San Diego, State of California.  My business

5    address is 9404 Genesee Avenue; Suite 340; La Jolla, California 92037.

6    2.  On May 29, 2008, I served a true copy of the attached document entitled

7

8    **CIVIL COVER SHEET** by placing it in a sealed envelope with postage fully prepaid

9    addressed as below and placed said envelope for collection and mailing on that date

10   following ordinary business practices:

11

12                    Richard T. Bowles, Esq.
                     Veronica O. Benigno, Esq.
13                    BOWLES & VERNA LLP
                  2121 N. California Boulevard, Suite 875
14                    Walnut Creek, CA 94596
15        Telephone:  925/935-3300; Facsimile:  925/935-0371
                      Attorneys for Plaintiff;
16   WHOLESALE AMERICA MORTGAGE dba California Financial Group

17   3.      I am familiar with King & Ballow's practice for collecting and

18

19   processing correspondence for mailing.  On the same day that correspondence is

20   placed for collection and mailing, it is deposited in the ordinary course of business

21   with the U.S. Postal Service in La Jolla, California.

22

23   I declare that I am employed in the office of a member of the bar of this court at

24   whose direction the service was made and I declare under penalty of perjury that the

25   foregoing is true and correct.  Executed on May 29, 2008, at La Jolla, California.

26

27

28                       Sherie Johnson

- 1 -                                                PROOF OF SERVICE